**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

CATHY E. MORTON,                              )
                                              )
                Plaintiff,                    )
                                              )
        v.                                    )         No. 2:19-CV-92 RLW
                                              )
ANDREW M. SAUL,                               )
Commissioner of Social Security,             )
                                              )
                Defendant.                    )

<u>**MEMORANDUM AND ORDER**</u>

        This matter is before the Court on review of an adverse ruling by the Social Security

Administration.   The Court has jurisdiction over the subject matter of this action under 42

U.S.C. § 405(g).   Plaintiff filed a brief in support of the Complaint (ECF No. 13), Defendant

filed a brief in support of the Answer (ECF No. 14), and Plaintiff filed a reply brief (ECF No.

15).   The Court has reviewed the parties' briefs and the entire administrative record, including

the transcripts and medical evidence.   Based on the following, the Court finds the

Commissioner's final decision is supported by substantial evidence on the record as a whole and

it will be affirmed.

**I. Factual and Procedural Background**

        On May 17, 2017, Plaintiff Cathy E. Morton ("Plaintiff") protectively filed applications

for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42

U.S.C. §§ 401, <u>et</u> <u>seq.</u>, and Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C.

§§ 1381, <u>et</u> <u>seq.</u>   Tr. 148, 215-21, 222-27.   Plaintiff's application was denied on initial

consideration, and she requested a hearing before an Administrative Law Judge ("ALJ").   Tr. 87-103, 160-61.

Plaintiff and counsel appeared for a hearing on December 11, 2018.   Tr. 29-64. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. The ALJ also received testimony from vocational expert ("VE") Karen Terrill.   Id.   On January 24, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled.   Tr. 10-24. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council   Tr.7-8.   On November 22, 2019, the Appeals Council denied Plaintiff's request for review.   Tr. 1-5.

## II.   Legal Standard

The Act defines as a disability the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).   The impairment or impairments must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work."   42 U.S.C. §§ 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.   20 C.F.R. §§ 404.1520(a), 416.920(a)(1); see also McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process).   First, the Commissioner considers the claimant's work activity.   If the claimant is currently engaged in "substantial

gainful activity," the claimant is not disabled.   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i);
McCoy, 648 F.3d at 611.

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner
looks to see whether the claimant has a severe physical or mental impairment or combination of
impairments.   Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); see also 20 C.F.R.
§ 416.920(a)(4)(ii).   "An impairment is not severe if it amounts only to a slight abnormality that
would not significantly limit the claimant's physical or mental ability to do basic work
activities."   Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007); see also 20 C.F.R.
§§ 416.920(c), 416.920a(d).   If the claimant does not have a severe impairment, the claimant is
not disabled.   20 C.F.R. § 404.1520(a)(4)(ii); McCoy, 648 F.3d at 611.   At Step Three, the
Commissioner evaluates whether the claimant's impairment meets or equals one of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings").   20 C.F.R.
§ 404.1520(a)(4)(iii); McCoy, 648 F.3d at 611.   If the claimant has such an impairment, the
Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of
the five-step process.   20 C.F.R. § 404.1520(d); McCoy, 648 F.3d at 611.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the
presumptively disabling impairments, the Commissioner assesses whether the claimant retains
the "residual functional capacity" ("RFC") to perform his or her past relevant work.   20 C.F.R.
§§ 416.920(a)(4)(iv), 416.945(a)(5)(i).   "RFC is defined as the most a claimant can still do
despite his or her physical or mental limitations."   Martise v. Astrue, 641 F.3d 909, 923 (8th Cir.
2011); see also 20 C.F.R. § 416.945(a)(1).   While an RFC must be "based on all relevant
evidence, including the medical records, observations of treating physicians and others, and an
individual's own description of his limitations," it is nonetheless an administrative

assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." Boyd v. Colvin, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. See Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. Id. At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. Hensley, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoted case omitted). "[T]he threshold for

such evidentiary sufficiency is not high." Id. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." Reece v. Colvin, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Id. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016).

## III.   The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of April 28, 2017; Plaintiff has the severe impairments of thoracic spondylosis, lumbar degenerative disc disease, and asthma; and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 15-18. The ALJ found Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations. The claimant can perform work with no climbing on ladders, ropes, or scaffolds. She can occasionally climb on ramps or stairs, stoop, kneel, crouch, or crawl. She should avoid concentrated exposure to extreme cold, vibration, and pulmonary irritants such as gas, fumes, odors, dust, and workspace with poor ventilation. She should avoid even moderate exposure to work hazards such as unprotected heights and being around dangerous moving machinery.

Tr. 18. At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work as a polybag operator. Tr. 23. The ALJ further found that Plaintiff was born on January 14, 1966, and was 51 years old, which is defined as an individual closely approaching advanced age. Plaintiff has at least a high school education and is able to communicate in English. Tr. 23.

The AJF determined the transferability of job skills was not material to the determination of disability because using the using the Medical-Vocational Rules as a framework supported a finding that the Plaintiff was "not disabled," whether or not she had transferable job skills.   Id.  At Step Five, relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as Cafeteria Attendant (Dictionary of Occupational Titles ("DOT") No. 311.677-010); Lunchroom Counter Attendant (DOT No. 311.477-014); and Ticketer (DOT No. 229.587-018). Tr. 23-24.   The ALJ concluded Plaintiff was not under a disability as defined by the Act from April 28, 2017, through the date of her decision on January 24, 2019.

## IV.   Discussion

Plaintiff challenges the ALJ's decision as not supported by substantial evidence on the record as a whole. (ECF No. 13 at 11.)   Specifically, Plaintiff contends the ALJ's decision is not supported by substantial evidence because: (1) The ALJ did not consider all of the relevant evidence in determining Plaintiff's RFC, as she did not consider Plaintiff's condition of Stage 3 then Stage 4 kidney failure; and (2) the ALJ erred in finding "persuasive" the statements of non-treating, non-examining physician Dr. Susan Rosamond.  (Id. at 13, 18.)   For the following reasons, the Court finds Plaintiff's arguments are without merit as the ALJ's decision is based on substantial evidence and is consistent with the Social Security Administration Regulations and case law.

### A.   The ALJ's RFC Determination

Plaintiff argues in her opening brief that the ALJ erred in failing to consider Plaintiff's Stage 3 and then Stage 4 kidney disease and resulting fatigue as part of Plaintiff's RFC finding.

(ECF No. 13 at 13.)   In her Reply Brief, Plaintiff concedes that the ALJ discussed Plaintiff's chronic kidney disease at Step 2 of the five-step sequential evaluation.   Plaintiff now asserts the ALJ "never mentioned the fact that Plaintiff's chronic kidney disease was initially stage III but then progressed to stage IV."   (ECF No. 15 at 1 (citing Tr. 16).)   Plaintiff contends the ALJ "has not left a clear record in this regard" as it cannot be determined from the ALJ's decision "whether or not the ALJ was even aware that Plaintiff had suffered from stage IV kidney disease;" did not properly consider Plaintiff's complaints of fatigue in connection with her kidney disease; and "failed to leave a clear record on the issue of whether or not Plaintiff stage III then stage IV chronic kidney disease constituted a severe impairment."   (ECF No. 15 at 1-2.) Plaintiff also contends the ALJ improperly made her own medical judgment as to the severity of Plaintiff's kidney disease by stating, "Overall, while the claimant has chronic kidney disease, noted at stage 3, she is not in kidney failure."   (Id. at 3, citing Tr. 16.)

The Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations."   20 C.F.R. § 404.1545(a).   "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments."   Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001).   "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"   Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d at 860, 863 (8th Cir. 2000)).   See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still

do despite her impairments.   Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995).
"Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the
claimant to establish his or her RFC."   Buford v. Colvin, 824 F.3d 793, 796 (8th Cir. 2016)
(internal citations omitted).   The Eighth Circuit clarified in Lauer that "some medical evidence
must support the determination of the claimant's RFC, and the ALJ should obtain medical
evidence that addresses the claimant's ability to function in the workplace."   245 F.3d at 704
(cleaned up; quoted cases omitted).   Thus, an ALJ is "required to consider at least some
supporting evidence from a professional."   Id.   See also Vossen v. Astrue, 612 F.3d 1011, 1016
(8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and
because RFC is a medical question, some medical evidence must support the determination of
the claimant's RFC.").

As previously discussed, the ALJ found Plaintiff has the RFC to perform light work with
the following limitations.   (Tr. 18.)   She is able to occasionally climb stairs and ramps but
should never climb ropes, ladders, or scaffolds.   (Id.)   She is able to occasionally stoop, kneel,
crouch, crawl, and bend.   (Id.)   She should avoid concentrated exposure to extreme cold,
vibration, and pulmonary irritants such as gas, fumes, odors, dust, and workspace with poor
ventilation.   (Id.) She should avoid even moderate exposure to work hazards such as unprotected
heights and being around dangerous moving machinery.   (Id.)

Although Plaintiff asserts that the ALJ's RFC determination is not supported by
substantial evidence because the ALJ did not expressly consider whether Plaintiff had stage 4
kidney disease, the Court finds the RFC determination was based on substantial evidence.
Specifically, as discussed below, the ALJ properly conducted a complete and detailed analysis of
Plaintiff's medical records, activities of daily living, and work history.

The ALJ determined that Plaintiff had severe impairments of thoracic spondylosis, lumbar degenerative disc disease, and asthma, but that her headaches, hypertension, hyperlipidemia, irritable bowel syndrome, gastroesophageal reflux disease, and chronic kidney disease was not severe (Tr. 15-16).  Plaintiff argues the ALJ improperly found her chronic kidney disease was not a severe impairment, but the ALJ properly evaluated this impairment and found it not severe (Tr. 16).   A severe impairment is an impairment, or combination of impairments, that significantly limits a claimant's ability to perform basic work activities without regard to age, education, or work experience.   See 20 C.F.R. §§ 404.1522, 416.922 (2019).   It is Plaintiff's burden to establish that her impairment or combination of impairments are severe. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).   While this is "not an onerous requirement for the claimant to meet . . . it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing".   Id. at 707-08.

The ALJ properly considered Plaintiff's chronic kidney disease and found Plaintiff's stage 3 kidney disease was not severe.  (Tr. 16.)  The ALJ stated that chronic kidney disease can cause fatigue, but found plaintiff on most occasions denied fatigue, did not endorse other symptoms associated with the impairment, and her examinations were unremarkable.  (Id.) Plaintiff contends the ALJ did not properly consider Plaintiff's kidney disease because she did not expressly state that Plaintiff's disease had moved to stage IV.  The ALJ's decision devoted half of a page to discussion of Plaintiff's kidney disease.  (Id.)  The ALJ recognized that Plaintiff was first diagnosed with renal insufficiency in May 2017 when lab work revealed her

creatinine level as 1.84 and her glomerular filtration rate ("GFR") at 36.[1]   (Tr. 16, 361.)
Plaintiff's primary care physician noted that Plaintiff reported using non-steroidal
anti-inflammatory drugs ("NSAIDS") by "taking 4 at a time," and asked Plaintiff to "limit
NSAIDS as [these] can cause renal issues such as what we are seeing on her labs."   (Tr. 361.)
In July 2017, Plaintiff's primary care physician referred her to a nephrologist, June Watson, D.O.
 (Tr. 16, 403).  Plaintiff denied fatigue at that time.  (Tr. 404).  Dr. Watson thought Plaintiff
did not look toxic and apart from hypertension did not "have much history that would make you
think that she should have poor kidney function."  (Tr. 16, 406, 521.)  Dr. Watson diagnosed
Plaintiff with chronic kidney disease, stage 3 (moderate) (Tr. 405).  Dr. Watson instructed
Plaintiff to get additional laboratory work and an ultrasound, and follow up in six weeks (Tr.
406).  Plaintiff obtained an ultrasound but did not comply with the nephrologist's instructions to
obtain additional lab work or to return in six weeks (Tr. 16, 518).  See Choate v. Barnhart, 457
F.3d 865, 872 (8th Cir. 2006) ("[A]n ALJ may properly consider the claimant's noncompliance
with a treating physician's directions, including failing to take prescription medications, seek
treatment, and quit smoking.") (internal citations omitted).

In April 2018, Plaintiff complained of back pain and fatigue and her primary care
physician referred her back to Dr. Watson (Tr. 16, 499, 503).  In May 2018, Dr. Watson saw
Plaintiff for the first time since July 2017 (Tr. 16, 518).  Plaintiff's blood pressure was 70/40,
she was lightheaded and dizzy, and lab work that day showed a creatinine level of 2.54 with a
GFR of 24.  (Tr. 16, 518.)  At that time, Dr. Watson diagnosed Plaintiff with chronic kidney
disease, stage IV (severe)  (Tr. 521).  Dr. Watson stated Plaintiff "seems to have progressed to

---

[1]"Glomerular filtration rate (GFR), the volume of blood filtered through the kidneys per minute,
is the best overall measure of kidney function[.]"   Merck Manual of Diagnosis and Therapy 2312 (19th
ed. 2011).

Stage 4" (id.), but noted the change in Plaintiff's creatinine may have been from low blood pressure or her Lisinopril blood pressure medication.   (Tr. 16, 518, 521.)   Dr. Watson immediately stopped Plaintiff's Lisinopril (Tr. 16, 518, 521).   Three months later, Plaintiff's blood pressure was 106/63, her creatinine level improved to 1.53 with a GFR of 43 (Tr. 16, 523), and her workup was negative (Tr. 16, 525).   Dr. Watson again diagnosed Plaintiff with chronic kidney disease, stage 3 (moderate) (Tr. 16, 525-26).   Dr. Watson believed Plaintiff's creatinine level could further improve with adequate hydration (Tr. 525-26), and recommended that Plaintiff avoid NSAIDs and try to stay better hydrated.   (Id.)   Plaintiff testified that her ongoing treatment for her kidney disease consisted of diet modifications only (Tr. 43).

As such, the ALJ properly considered the course of treatment, including the deterioration and subsequent improvement in Plaintiff's lab results, in finding her kidney disease not severe (Tr. 16).   Plaintiff's complaint that the ALJ failed to expressly mention she had stage 3 then stage 4 renal failure overlooks the ALJ's discussion of the relevant laboratory results and medical records in the decision (Tr. 16.)   The ALJ recognized that Plaintiff's chronic kidney condition improved after her use of NSAIDS and Lisinopril was stopped (Tr. 16).

Plaintiff claims the ALJ should have found her kidney disease severe based on her complaints of fatigue (Tr. 40).   However, the ALJ found Plaintiff's allegation of fatigue was not supported by the record as a whole (Tr. 16).   In April 2017, May 2017, and July 2017, Plaintiff denied fatigue (Tr. 16, 382, 390, 396, 404, 466).   The ALJ recognized that Plaintiff complained of fatigue in March 2018 and April 2018 (Tr. 16, 491, 499).   In April 2018, Plaintiff's primary care physician started B12 injections and decreased her Zoloft dosage to address her complaints of fatigue (Tr. 503).   Plaintiff subsequently denied any fatigue (Tr. 508).   The ALJ considered Plaintiff's denials and reports of fatigue and resolved the conflict within the record (Tr. 16).

This is the ALJ's responsibility.   As such, the ALJ properly found Plaintiff's kidney disease not severe because her allegations of fatigue were not supported by the record as whole (Tr. 18).

Even if the ALJ erred in not finding Plaintiff's kidney disease to be a severe impairment, remand would not be required.   As discussed below, the ALJ properly found the opinion of the state agency medical consultant persuasive (Tr. 21-22).   The state agency medical consultant considered Plaintiff's stage 3 chronic kidney disease a severe impairment but found her capable of a range of light work consistent with the RFC finding (Tr. 116, 119-23).   As such, remanding the case to identify kidney disease as a severe impairment would not change the ALJ's decision.

Finally, Plaintiff contends the ALJ improperly made her own medical judgment as to the severity of Plaintiff's kidney disease by stating that while Plaintiff "has chronic kidney disease, noted at stage 3, she is not in kidney failure."  (Tr. 16.)   This contention does not require remand.   This is not a situation where the ALJ substituted her opinions for those of a physician or drew her own inferences as to references in medical records or physicians' notes.   Cf. Combs v. Berryhill, 878 F.3d 642, 646-47 (8th Cir. 2017) (ALJ erred in relying on his own inferences as to the relevance of treating physicians' notations of "no acute distress" and "normal movement of all extremities" when determining the relative weight to assign to state-agency medical consultants' opinions with diverging conclusions).   Here, the ALJ's decision was based not on her own opinion but rather on objective medical findings and treatment history.   The Court notes that Plaintiff's medical records contained varying references to "chronic renal disease" and "chronic renal failure" in notes from the same office visit (e.g. Tr. 512, 514; 518, 520; 523, 525), and these terms appear to be used interchangeably.[2]   The Court finds the ALJ's statement that Plaintiff was "not in kidney failure" was merely the use of everyday language to express that

_____

[2] See, e.g., Merck Manual of Diagnosis and Therapy 2442 (19th ed. 2011) (heading titled "Chronic Kidney Disease" following by subheading "(Chronic Renal Failure)").

Plaintiff's stage 3 chronic kidney disease had not progressed to end-stage kidney disease such that her kidneys "failed" and dialysis or a transplant might be required.[3]

B. Dr. Rosamond's Opinion

Plaintiff also contends the ALJ clearly erred in giving weight to and finding "persuasive" the statements of non-treating, non-examining physician Dr. Susan Rosamond.  (ECF No. 13 at 18.)  Plaintiff objects that Dr. Rosamond's opinions are expressed in brief answers on a form; she did not examine or treat Plaintiff; she primarily referenced medical records from 2013 through 2016, prior to the alleged onset of disability; and she did not offer any explanation as to Plaintiff's fatigue caused by chronic kidney disease.  (Id.)

Because Plaintiff applied for benefits after March 27, 2017, the ALJ applied a new set of regulations for evaluating medical evidence that differs substantially from prior regulations (Tr. 19, 21).  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).  The Commissioner's regulations provide that for claims filed on or after March 27, 2017, the agency will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion.  See 20 C.F.R. § 404.1520c(a) (2017).  Instead, the agency will evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following five factors:

> (1) Supportability
> (2) Consistency

---

[3]See, e.g., National Institute of Diabetes and Digestive and Kidney Diseases, Kidney Failure, https://www.niddk.nih.gov/health-information/kidney-disease/kidney-failure ("Kidney disease can get worse over time and may lead to kidney failure.  If less than 15 percent of your kidney is working normally, that's considered kidney failure.") (last visited Jan. 28, 2021); National Kidney Foundation, What is Kidney Failure, https://www.kidney.org/atoz/content/KidneyFailure ("Having kidney failure means that:  • 85-90% of your kidney function is gone  • your kidneys don't work well enough to keep you alive") (last visited Jan. 28, 2021).

        (3) Relationship with the claimant (which includes)
              (i) Length of the treatment relationship
              (ii) Frequency of examinations
              (iii) Purpose of the treatment relationship
              (iv) Extent of the treatment relationship
              (v) Examining relationship
        (4) Specialization
        (5) Other factors

20 C.F.R. § 404.1520c(a)-(c).

The ALJ must explain how she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding.  20 C.F.R. § 404.1520c(b)(2).  The ALJ must explain in her decision how persuasive she finds a medical opinion or a prior administrative medical finding based on these two factors.  Id.  The ALJ may but is not required to explain how she considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical.  20 C.F.R. § 404.1520c(b)(3).

The Commissioner's regulations explain as to the supportability factor, "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1) (2017).  In other words, an opinion is more persuasive if it presents more relevant objective medical evidence and explanatory rationale in support of the opinion.

As to the consistency factor, "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be."   20 C.F.R. § 404.1520c(c)(2) (2017).   Stated more simply, an opinion is more persuasive if it is more consistent with the overall evidence as whole.

In her Reply brief, Plaintiff modifies her argument to assert that Dr. Rosamond's opinion is deficient in supportability because she did not offer "any explanation as to Plaintiff's conditions of stage III and stage IV kidney disease."   (ECF No. 15 at 4.)   Plaintiff contends that Dr. Rosamond's opinion offers no support for her conclusions as to Plaintiff's physical abilities, as she did not provide any rationale to explain her conclusions that Plaintiff's medical conditions would allow her to perform light work and that Plaintiff could "occasionally," i.e., up to one-third of an eight hour day, climb ladders, ropes, and scaffolds.   (Id. at 4-5.)   Plaintiff notes she had no relationship with Dr. Rosamond and the doctor's area of specialization does not appear in the record.   Plaintiff concludes that applying the factors required by the regulation in evaluating claims filed after March 27,2017, no "reasonable mind" would find Dr. Rosamond's opinions persuasive.   (Id. at 5.)

The ALJ properly considered the medical opinions and prior administrative medical findings in compliance with the new regulations.   (Tr. 21-22.)   Susan Rosamond, M.D., a state agency medical consultant, reviewed the longitudinal medical records including records through September 2017, and opined in October 2017 that Plaintiff could perform a range of light work (Tr. 116, 119-23).   Dr. Rosamond considered Plaintiff's stage 3 chronic kidney disease in making this determination and found it to be a primary and severe impairment (Tr. 116, 121-22). Plaintiff's objection that Dr. Rosamond did not address her diagnosis with stage 4 chronic kidney disease reflects that the diagnosis did not occur until the subsequent May 2018 nephrologist visit. As discussed above, the ALJ considered medical records from Plaintiff's May 2018 and August 2018 nephrologist's visit.

Dr. Rosamond opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, sit for 6 hours, and stand and walk for 6 hours (Tr. 119-20).  Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl (Tr. 120).  She must avoid concentrated exposure to extreme cold, vibration, and pulmonary irritants, and moderate exposure to hazards (Tr. 121).  The ALJ found the opinion persuasive (Tr. 21-22).  20 C.F.R. § 404.1513a(b)(1) (Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation).

The ALJ found Dr. Rosamond's opinion was supported by notation to specific diagnostic imaging and clinical findings, including the comprehensive examination findings of the consultative examiner that found intact range of motion, full strength, and intact sensation and reflexes.  (Tr. 22, 411-13.)  The ALJ found Dr. Rosamond's opinion was consistent with the medical record as a whole, which demonstrated only conservative treatment history during the period under consideration and rather unremarkable clinical physical examinations (Tr. 22).  The ALJ incorporated Dr. Rosamond's limitations into the RFC, but also precluded Plaintiff from climbing ladders, ropes, and scaffolds (Tr. 18, 22).

While plaintiff asserts the ALJ improperly relied on Dr. Rosamond's opinion (ECF No. 13 at 18-19), the new regulations require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified and experts in Social Security disability evaluation.  See 20 C.F.R. § 404.1513a.  The ALJ's reasonable reliance on an opinion from a highly qualified expert is within the zone of choice.  See Biestek, 139 S. Ct. at 1154 (substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").  Further, while Plaintiff criticizes Dr. Rosamond's opinion, she submitted no medical evidence contradicting the doctor's opinion.  See Ponder v.

16

Colvin, 770 F.3d 1190, 1195 (8th Cir. 2014) (the ALJ may properly consider the fact that no physician imposed work restrictions during the time period relevant to Plaintiff's claim).   The ALJ did not err in finding Dr. Rosamond's opinion persuasive.

**V.   Conclusion**

For the reasons discussed above, the Court finds the decision of the Commissioner, that Plaintiff is not disabled, is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Cathy E. Morton's Complaint is **DISMISSED with prejudice**.

A separate judgment will accompany this Memorandum and Order.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 29th day of January, 2021.